# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF NORFOLK, OCTOBER TERM 1833, AT DEDHAM.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

---

## MEHETABEL NIGHTINGALE *versus* SETH BURRELL.

Devise:—I give to my daughter M and her children one half of my house and land &c. Item, I give to my daughter J and her children the other half. But if either of my aforesaid daughters should die and leave no children, my will is, that my surviving daughters and their children should enjoy their deceased sister's part. M was unmarried at the time of making the will. J was then married, but whether she ever had any child did not appear. *Held* that J took an estate tail.

A deed by husband and wife conveying estate of which they are seised in her right in fee tail, will bar the entailment, provided the requisites of *St.* 1791, *c.* 60, have been complied with.

A deed of an estate tail was made, purporting to be in consideration of a sum of money and of a lease of the land to the grantor for one year at an apparently nominal rent; and before the expiration of the lease a declaration of trust was made by the grantee, among other things, to permit the grantor to have possession during his life; and the grantor continued in possession from the time of giving his deed. It was *held*, that *primâ facie* the deed was given upon a valuable consideration and *bonâ fide*, and so, in these respects, was *primâ facie* sufficient to bar the entailment.

Upon a case stated it appeared that this was a writ of formedon in remainder

Moses Brackett died seised of the premises below described, situate in the county of Norfolk, and by his last will, dated October 18, 1791, and approved December 3, 1793, he devised the same in these words : — " I give to my daughter Mehetabel (the demandant) and her children, one half of my house and barn and land, with the other buildings I bought of Mr. John Beale near the meetinghouse. Item, I give to my daughter Joanna Burrell and her children the other half of the aforesaid house, land and other buildings. But if either of my aforesaid daughters, Mehetabel or Joanna, should die and leave no children, my will is that my surviving daughters and their children should enjoy their deceased sister's part."

At the time when the will was made, the demandant was unmarried, and Joanna Burrell was the wife of the tenant. On September 30, 1829, Joanna died, leaving no child. Elizabeth Bass, a daughter of the testator, died before Joanna, leaving no children. Sarah Nightingale and Frances Nightingale, two other daughters, are yet living, the former having eight children, and the latter five. The demandant has one child.

Soon after the death of the testator, Joanna and her husband, the tenant, took possession of the land and buildings devised as above stated, having no other title thereto except that derived from the will.

On February 16, 1796, the demandant and Joanna and her husband made a partition of the land, by deeds, " to the intent and purpose that they might know, have, hold, possess and enjoy the several moieties thereof for ever," in manner set forth in the deeds, and the demandant covenants that the tenant and his wife " shall have, hold, possess and enjoy to their proper use and behoof the moiety set off to them, and that she will at all times hereafter warrant, maintain and defend them in the quiet and peaceable possession and enjoyment of the same against all and every person lawfully claiming right, title or inheritance therein from or under the demandant." The tenant and his wife and the demandant thereafter held their moieties in severalty, until the decease of Joanna, and since her decease the tenant has retained possession of the de-

manded premises, being the moiety assigned to him and Joanna, against the will of the demandant, who, before the commencement of this suit and since Joanna's decease, made entry into the demanded premises.

On April 19, 1806, the tenant and his wife made a deed of the demanded premises to William Walter, purporting to be signed, sealed and delivered in presence of two subscribing witnesses, viz. Mottram Vesey and George Nightingale, which was acknowledged on the same day by the grantors, before Peter B. Adams, a justice of the peace for the county of Norfolk, and was recorded in the registry of deeds for that county on the 29th of the same month. By this deed, which recites that Joanna is a daughter of the testator and a devisee under his will, in common with the demandant, and' that a partition has been made, the tenant and his wife "in her own right, and each of us, in consideration of two thousand dollars to us paid by William Walter, of Boston, in the county of Suffolk, merchant, which we hereby acknowledge to have received, and in further consideration of a lease for one year of the herein-granted premises, made by said Walter to the said Joanna and bearing even date herewith, she thereby rendering rent therefor the sum of five dollars, have and hath given, granted, sold and conveyed unto the said Walter and his heirs, a piece or parcel of land," &c., *habendum* to Walter, his heirs and assigns to their and his use for ever. The grantors covenant that Joanna is lawfully seised of the granted premises in her own right in fee, and that they will warrant the same against all lawful claims.

On October 7, 1806, by an indenture made between Walter of the one part, and the tenant and his wife of the other part, in which it is recited that Walter is tenant in fee simple of the demanded premises, Walter, in consideration of 2500 dollars paid to him by the tenant and his wife, declares and covenants that he holds and will hold and that his heirs will hold the same premises, upon trust to permit the tenant and his wife, and the survivor, to receive the rents and profits to their, his or her own use during their lives, and his or her life, without accounting, and after the death of the survivor, upon trust for such person or persons to whom the tenant and

his wife, by deed, executed and acknowledged by them both, during their joint lives, should appoint, limit and direct the premises and subject to such uses, charges, and covenants as they by such deed shall make, direct, declare and appoint, but with certain provisoes to protect Walter and his heirs from loss, and for the benefit of the creditors of the tenant or his wife, in case of the insolvency of the estate of either of them

If upon these facts the demandant was entitled to recover, the tenant was to be defaulted, and the demandant to have judgment for possession for such fractional part of the demanded premises as the Court should direct; if not, the demandant was to become nonsuit.

The cause was argued in writing.

*Metcalf,* for the demandant, contended that the contingency in the will was not too remote to be good as an executory devise; and cited to this point *Hughes* v. *Sayer,* 1 P. Wms. 534; *Doe* v. *Webber,* 1 Barn. & Ald. 713; *Anderson* v. *Jackson,* 16 Johns. R. 382; *Jackson* v. *Chew,* 12 Wheat. 153; *Wilkes* v. *Lion,* 2 Cowen, 333; *Den* v. *Schenck,* 3 Halsted, 29; *Morgan* v. *Morgan,* 5 Day, 517; *Richardson* v. *Noyes,* 2 Mass. R. 56; *Ide* v. *Ide,* 5 Mass. R. 500; *Keiley* v. *Fowler,* Wilmot's Opinions, 306 *et seq.*

*Gourgas,* for the tenant. Joanna Burrell took an estate tail. *Wild's case,* 6 Co. 17 *b; Doe* v. *Gunniss,* 4 Taunt. 313; *Crone* v. *Odell,* 1 Ball & Beat. 458; *Robinson* v. *Robinson,* 2 Ves. sen. 225; *S. C.* 1 Burr. 38; *Robinson* v. *Hicks,* 3 Bro. P. C. (Tomlins's edit.) 180; *Franklin* v. *Lay,* 2 Bligh, 59, note; *Doe* v. *Applin,* 4 T. R. 82; *Stanley* v. *Lennard,* 1 Eden, 87; *Doe* v. *Halley,* 8 T. R. 5; *Jesson* v. *Wright,* 2 Bligh, 1; Appendix to First Report of Commissioners on the Law of Real Property, 553, 554. If she took an estate tail, then by virtue of *St.* 1791, *c.* 60, § 1, the entailment was barred by the deed of the tenant and his wife Joanna to Walter.

If Joanna did not take an estate tail, she took an estate for life, and this was forfeited by the conveyance to Walter. *Commonwealth* v. *Welcome,* 5 Dane's Abr. 13 *et seq.* In this view the interest of the demandant must be considered as a contingent remainder, dependent on the contingency of

Joanna's death leaving no children, even supposing that the words "leaving no children," mean, "leaving no children at the time of her death"; for the interest of a devisee shall not be considered as an executory devise when it can by possibility be construed to be a remainder. If the interest of the demandant was a contingent remainder, it was barred by the tortious conveyance of the tenant for life, which destroyed the freehold that supported it and vested a fee in Walter, in which the estate for life was merged. 5 Dane's Abr. 13, 14 ; Cornish on Remainders, 199 ; *Archer's case*, 1 Co. 66 ; *Chudleigh's case*, 1 Co. 120 ; Fearne on Remainders, (7th edit.) 324, 326.

The contingency is too remote to be good as an executory devise. The words "die and leave no children," are equivalent to "die without issue "; *Hughes* v. *Sayer*, 1 P. Wms. 534 ; and the settled construction of such expressions is, "an indefinite failure of issue." Appendix to First Report of Commissioners on the Law of Real Property, 553 ; *King* v. *Melling*, 2 Lev. 58 ; *S. C.* 1 Ventr. 225 ; *Clache's case*, Dyer, 330 ; *King* v. *Rumball*, Cro. Jac. 448 ; *Chadock* v. *Cowley*, Cro. Jac. 695 ; *Anderson* v. *Jackson*, 16 Johns. R. 382 ; *Massey* v. *Hudson*, 2 Meriv. 130.

The counsel contended also, that the demandant was estopped by the deed of partition from her to the tenant and his wife.

*S. Hubbard*, on the same side, to the point, that Joanna took an estate tail, cited And. 43 ; *Davie* v. *Stevens*, 1 Doug. 321 ; *Hodges* v. *Middleton*, 2 Doug. 431 ; *Doe* v. *Perryn*, 3 T. R. 493 ; *Wharton* v. *Gresham*, 2 W. Bl. 1083 ; *Cook* v. *Cook*, 2 Vern. 545 ; *Dansey* v. *Griffiths*, 4 Maule & Selw. 62 ; *Lillibridge* v. *Adie*, 1 Mason, 239.

*Metcalf*, in reply, argued that if the devise to Joanna was an estate tail, the entail was not docked by the deed to Walter. As the tenant and his wife during her life, and the tenant ever since, have been in undisturbed possession of the demanded premises, without any reconveyance to them or either of them, the whole proceeding, by way of conveyance to Walter, is unavailing. The deeds in the case seem to show that the transfer was scarcely *bonâ fide*. If the estate

was not an estate tail, then the deed to Walter is of no avail after the death of Joanna Burrell.

SHAW C. J. delivered the opinion of the Court. The first and most important question in this case, is, what estate did Joanna Burrell take, in the property devised to her by the will of her father, Moses Brackett.

It is contended on the part of the demandant, that it is an executory devise, and could not be barred or affected by the deed, or by any other act done by the devisee Joanna Burrell in her lifetime, and in the event that has happened, the death of Joanna, leaving no children, the estate, by force of the devise, has become vested in the surviving sisters, of whom the demandant is one.

On the part of the tenant it is contended, that the devise to Joanna was an estate tail, with a contingent remainder to the sisters ; that Joanna, being tenant in tail, had a power jointly with her husband, by force of the statute of this State, by her deed duly executed and recorded, to bar all remainders expectant upon such estate tail, and convert the same into an estate in fee simple, and that by the deed shown to have been executed to Walter, this effect has been produced, so that the claim of the demandant, to a contingent remainder, no longer exists.

If this suit is in form a *formedon in remainder*, as appears in the statement of facts, it is obvious that the demandant has no right to recover upon showing herself entitled to the estate as an executory devise ; because it can only be held as an executory devise, by showing, that there was no estate tail in Joanna, and no remainder, contingent or vested, upon which alone formedon in remainder can be maintained. But as the question has been argued upon general grounds, without reference to the form of the writ, as the effect of deciding it upon this ground would be merely to turn the demandant round to another form of action, and as there are other sisters claiming upon the same grounds, who are understood to be represented in this suit, we have thought it proper to consider the rights of the demandant, without regard to the form of her action.

Many of the subjects alluded to in the argument, are among the most abstruse and profound of all the questions

brought before courts of justice upon this most difficult brancn of the law of real property ; they depend upon considerations and distinctions highly technical, artificial and refined, and to render the subject more perplexing, there is found, upon some points, a most distressing diversity of opinion among those eminent jurists, who are regarded as the highest authorities upon most questions of law. But we think the cause before us may be decided, in conformity to those fixed rules in which all the authorities concur, without involving the discus sion of those litigated and vexed questions which have so much divided them.

The essential difference in the quality of the estate, between a remainder and an executory devise, is, that the former may be barred at the pleasure of the tenant in tail, by a common recovery, or, in our State, by a conveyance by deed ; but he who holds by force of an executory devise, has an estate above and beyond the power and control of the first taker, who cannot alienate or change it, or prevent its taking effect, according to the terms of the will, upon the happening of the contingency, upon which it is limited. It does not depend upon the particular estate, but operates by way of determination of the first estate limited, and the substitution of another in its place.

As an executory devise was allowed only to give effect to the intent of a testator, when such intent would otherwise have wholly failed, as not being conformable to the rules of the common law in regard to the transmission of real property, it has been adopted as a fixed and settled rule, that whenever a future interest in lands is so devised, that conformably to the rules of law, it can take effect as a remainder, it shall be construed to be a remainder, and not an executory devise. *Purefoy* v. *Rogers,* 2 Saund. 388. And in *Doe* v. *Morgan,* 3 T. R. 765, it is said by Lord *Kenyon,* that if ever there existed a rule respecting executory devises, which has uniformly prevailed without any exception to the contrary, it is that which is laid down by Lord *Hale,* in *Purefoy* v. *Rogers,* that " where a contingency is limited to depend on an estate of freehold, which is capable of supporting a remainder, it

shall never be construed to be an executory devise, but a <span>Nightingale</span> contingent remainder only, and not otherwise."

<em>v.</em><br>Burrell.

Another settled rule in regard to an executory devise, to prevent this mode of devising from being resorted to as a means of creating a perpetuity, is, that it must vest within the compass of a life or lives in being, at the time the devise takes effect, that is, at the death of the testator, and twenty-one years and the fraction of a year after, otherwise such executory devise is wholly void.

And in the application of this rule, regard is had, not to any event which has taken place after the death of the testator, but the question is, whether by possibility the estate is so limited upon a contingency, that it may remain more than the allowed period, before the contingent interest will become vested, and if it can, it is not a good executory devise.

There are two kinds of executory devise ; one, where an estate is devised to one, but upon some future event that estate is determined, and the estate thereupon is to go to another ; the other, when the estate is limited to commence *in futuro*, contrary to the rules of the common law. In the latter case, the fee in the mean time remains in the heir of the devisor.

In determining, therefore, with a steady reference to these rules, whether a contingent interest given by will, is in legal contemplation an executory devise, or a remainder, the first consideration is, whether the estate, after which it is limited, is an estate in fee or in tail.

If the estate after which it is to take effect, is an estate tail, upon which the contingent is dependent, there are two grounds, upon which, in most if not in all cases, it may be concluded, that the limitation over does not constitute an exeuctory devise.

1. That the contingent interest thus given, after the devise of an estate tail, can in most instances take effect as a re mainder, and so may become barred by a common recovery suffered by the tenant in tail ;

2. Because if the devise is made to depend upon the determination of a previous estate tail, such particular estate may last as long as there remain any issue in tail, that is, to an

indefinite and unlimited period, and so the contingent estate might not vest within the time required for the vesting of an executory devise, and therefore it cannot take effect as such.

To determine whether any particular devise constitutes an estate in fee or an estate tail, considered by itself, is usually not very difficult. It depends upon certain rules of construction, applied to particular forms of words, which are in a good degree settled. But it is a well-known rule of construction, that every clause and word in a will are to be taken together, however detached from each other, to ascertain the intent of the testator. When therefore, by one clause in a will, an estate for life or an estate in fee is given by plain words, if it appear in other parts of the will, by explanatory words or by implication, that it was the intent of the testator, in such devise, that the issue of the devisee should take the estate in succession after him, then the life estate is enlarged in the one case, and the estate in fee is reduced in the other, to an estate tail.

If therefore, an estate is devised to A and his heirs, which is a fee ; and it is afterwards provided, that if A die without issue, then over, this reduces it to an estate tail by implication. The law implies that by " heirs " in the first devise, was intended heirs of the body, and it also implies from the proviso, that it was not the intent of the testator, to give the estate over, and away from the issue of the first devisee, but on the contrary, that such issue should take after the first devisee.

The difficulty therefore in determining, whether a contingent devise is an executory devise or a remainder, usually arises where there is a plain devise in fee in one clause, and afterwards, a gift over upon the contingency of the first devisee dying without issue. If the implication from such description of the contingency taken together is, that in the event described it was the intention and expectation of the testator, that the issue should take in succession, then the fee first created is reduced to an estate tail, the tenant in tail may suffer a recovery and bar all remainders, and the gift over cannot take effect as an executory devise, both because it may take effect as a contingent remainder, and because it might not vest within the time limited for the vesting of the estate under an

executory devise. But if properly described, the event of a person's dying without leaving issue surviving or not, is a contingency, upon which an executory devise may be limited over, as well as the happening of any other event. And there may be very good reasons why a testator should select this event, as one, upon the happening of which, or not, the estate should remain absolute in the first devisee, or go over to some secondary object of the testator's bounty. He may properly consider, that if the devisee, a son for instance, the first object of his bounty, has children, who survive him, he shall have the estate absolutely, to enable him to provide for such children, but leaving it to his discretion, whether he will transmit the estate to them, or make any other disposition of it, as he, such first devisee, may determine. But if such first devisee should leave no children to be provided for, the testator might well determine to adopt his own mode of disposing of the estate, and direct it in that event to vest in some other person. If therefore the description of this contingency is such, as not to raise any implication, that it is the intent of the testator that the issue are to take the estate as children and heirs of the parent, then the estate limited over is a good executory devise ; the first devisee has an estate in fee, deter minable upon the happening of the contingency, but otherwise absolute.

In the former case, taking the first devise in fee, with the subsequent words " if he die without issue," as raising a necessary implication, that it was the intention of the testator to give the estate to the first devisee and his issue, it is a tenancy in tail, to which the law annexes certain incidents, among which the most important is, that the tenant in tail may suffer a common recovery ; in the other, the law implies, that notwithstanding the first devise in fee, and the subsequent limitation over, upon the contingency of the devisee's dying without issue, there was no implication that if there were issue, they were to take the estate by force of the devise ; then the original estate in fee, created by the first clause, is not reduced to an estate in fee tail, but the first devisee always continues to hold as tenant in fee, an estate in fee simple, determinable and defeasible, upon the happening of the event of his dying

10 *

*Nightingale v. Burrell.*

without actually leaving children surviving him ; but otherwise absolute and indefeasible, so that he has the absolute disposal of it either by will or otherwise. During his lifetime, therefore, he cannot suffer a common recovery, but he may alienate the estate subject only to the condition of not dying without leaving issue surviving him. With these general views of the legal distinction between an executory devise, and a remainder, let us now consider the provisions of Moses Brackett's will.

A devise to one and his children, he having no children at the time, is equivalent to a devise to him and his issue, and creates an estate tail. *Wild's case,* 6 Rep. 16 ; *Wood* v. *Baron,* 1 East, 259 ; *Davie* v. *Stevens,* 1 Doug. 321 ; 6 Cruise's Dig. 280, *tit.* 38, *c.* 12, § 27. Here it is found, that at the time of making the will, Mehetabel was single, having no children ; of course the devise to her was an estate tail. It is not found whether the daughter Joanna Burrell had any child at that time or not. If she had not, the point is beyond doubt, that the words constitute an estate tail in her. But if she had a child at the time, we are of opinion that taking the whole together, the word " *children* " must be deemed to be a word of limitation and not a word of purchase. There are several reasons for this. The subsequent provision, that if she die and leave no children, shows a manifest intent, that the children should take after the mother, which they could only do as tenants in tail. If they took *per capita,* as purchasers and tenants in common with their mother, they would take with and not after her, and would take estates for life only, there being no words of limitation. And if it be argued, that the subsequent words enlarge this to an estate tail by implication, it is answered, that that might well be, if the estate were in the first clause given to the mother alone ; but if it is an estate to the mother and children in the first instance, as purchasers, then the proviso would be, if *they* should die and leave no children, in order to create an estate tail by implication in the first takers. It is also a strong circumstance, that the testator used exactly the same form of words, in regard to an unmarried daughter, where the word " children " could only be used as a word of limitation, and in regard to both, devises

over, in the same terms, in case of their death without chil-
dren, thereby manifesting an intention of creating the same
estate, upon the same limitations, in respect to both. Consid-
ering it as the clear intent from the will, that the daughter
Joanna should take the estate, and her children, if she had
any, after her, and that could only be done, by considering
her as taking an estate tail, to her and her issue, and that
this conclusion is fortified by the general tenor of the will, we
are of opinion that Joanna Burrell did take an estate tail,
under this will.*

Such being the nature of her estate, the contingency of
dying and leaving no issue, is precisely equivalent to dying
without issue, and looks therefore to the general failure of
issue before the devise over is to take effect. Then by the
well-established principle, the devise over cannot take effect
as an executory devise, both because it can be supported
and have effect as a remainder, expectant, upon the deter-
mination of the estate tail to Joanna Burrell and her issue,
and also, because if an executory devise could be so limited
upon an estate tail, it might not vest within the time allowed
for the vesting of the estate under an executory devise.

The next question is, whether the demandant is entitled to
recover the whole or any part of the estate as a remainder.

If the tenant had issue by his wife Joanna, a fact which
does not appear in the statement of facts, it is obvious that
the tenant would hold a freehold estate for his own life, as
tenant by the curtesy. If the wife was seised as tenant in
tail, it was as tenant in tail general ; the issue would be enti-
tled to inherit as heir in tail, and therefore the husband would
be tenant by the curtesy. If the husband is tenant by the
curtesy, the demandant would have no right to recover now,
whatever right she might have after his death. If it depend-
ed upon this consideration alone, it would be necessary to
ascertain the fact, whether there has been issue of the mar
riage born alive, before any judgment could be given.*

But the remaining material question is, whether the estate

---

* It was agreed by the parties, after this opinion was given, that neither at
the time of the making of her father's will, nor at any time, had Mrs. Burrell
any child.

Nightingale
*v.*
Burrell

tail, and the remainders and reversions expectant thereon, have not been effectually barred, by the deed executed by Seth Burrell and his wife to William Walter.

By the statute of 1791, *c.* 61, § 1, a simple, easy and efficacious mode of barring estates tail is provided. After reciting the dilatory and expensive process of common recovery, the statute professes to provide a more simple method of accomplishing this object, and one not liable to the same objections. The first and most obvious conclusion arising from this statute, taking the preamble and the enacting clauses together, ·is, that wherever an estate tail might before the statute have been barred by a common recovery, and an estate in fee substituted therefor, the same thing may be done under the statute, by a deed duly executed in the manner provided by the statute.

The provision ·of the statute is as follows : —" That it shall be lawful for any person or persons who shall be seised and possessed of any lands, tenements or hereditaments, within this commonwealth, in fee tail, being of full age, by deed duly executed before two or more credible subscribing witnesses, acknowledged before &c., or before any justice of the peace in this commonwealth, &c., and recorded in the record of. deeds for such county, for a good or valuable consideration, *bonâ fide,* to give, grant, sell and convey such lands, tenements or hereditaments, or any part thereof, in fee simple, to any person or persons capable, by law, of taking and holding real estates, in this commonwealth ; and such deed so executed, acknowledged and recorded, shall be sufficient and effectual in law, to bar all estates tail in such lands, tenements, or hereditaments ; and all right and title of the tenant or tenants in tail, and their issue in tail, and of all others claiming under and by force of the original gift or grant which created such estate tail, in and to such lands, tenements or hereditaments ; and all reversions and remainders, expectant upon the determinations of such estates tail ; and to pass, and to vest the absolute inheritance, in fee simple, of such lands, tenements or hereditaments, in such purchasers or grantees, without any fine or common recovery, made or ·uffered, or any other act or ceremony whatever."

In comparing the deed with these provisions, it appears that every requisite of the statute has been complied with.

Seth Burrell and Joanna his wife, of full age, being at the time seised of the premises within this commonwealth, in fee tail, in her right, and being in possession thereof, duly executed their deed, on the 19th of April, 1806, before Mottram Vesey and George Nightingale, two subscribing witnesses, who are presumed to be credible, in the absence of all proof to the contrary, which was duly acknowledged on the same day before Peter B. Adams, a justice of the peace of the commonwealth, and was duly recorded in the registry of deeds for the county of Norfolk. It purports to be made upon a valuable consideration of two thousand dollars ; nothing appears to indicate that it was not made in good faith ; and it purports to give, grant, sell, and convey to Walter and his heirs, he being described as of Boston, merchant, and of course being capable, by law, of taking and holding real estate in this commonwealth.

Can there be any reasonable doubt, that under the statute, a deed by husband and wife, conveying estate of which they are seised in her right in fee tail, is as effectual to convey her estate and convert it into a fee simple by force of the statute, as it would be to transfer the estate of which she is seised in fee simple ?

In the case of *Lithgow* v. *Kavenagh*, 9 Mass. R. 174, Mr. Justice *Sewall* intimates such a doubt, but it did not become necessary for the Court to give any opinion upon it. He says, " But it may deserve some consideration, whether the form of conveying hitherto in use, for married women, as to their estates in fee simple, rendered effectual by a peculiar usage, against general principles, is also, under this statute provision for barring estates tail, an assurance of title, after the death of the husband, against the wife and her issue, claiming *per formam doni*." If this doubt were well founded, the only mode, in which an estate could be barred, would be by fine or common recovery, and the objections to that mode would remain in their full force, in all cases, where the estate tail happens to be in a married woman. He intimates, that in such case, a manifest intent to convey that

Nightingale
v.
Burrell.

peculiar interest should be apparent, and perhaps it ough to appear, in case of a married woman, that she acts with out undue influence of her husband.

In regard to the apparent intent, where the land is minutely described, and where the only estate and interest, which the grantors have in it, is an estate tail, the intent of the grantors to transfer it must be sufficiently apparent.

As the statute has made no provision for the separate examination of a married woman, in executing a deed under this statute, to ascertain whether, in the disposal of her estate, held in this qualified way, she is under any unsuitable bias, it seems very clear, that a gratuitous examination of this kind, in point of fact, would not render the deed effectual, under the statute, if otherwise it did not come within its provisions. It is only in case the deed conforms to the statute, that the statute gives it the effect of a recovery, to bar all remainders and reversions.    The consequence therefore would be, that a common recovery must still be resorted to, with all its ex pense and delay, to bar the entail, where the tenant is a *feme covert*.    But what is the ground of this doubt ?    If founded in considerations of policy, and in the safety of those who claim under married women, where is the difference, in this respect, between giving her such a power over her estate tail, and her estate in fee simple.    The policy does exist in England, and there a married woman can only convey by fine, or other matter of record, in conducting which she is examined separately.    But from the earliest times, we overlooked this danger to heirs, and permitted her to join with her husband in a conveyance of her separate estate in fee simple by deed ; why then should the policy remain in regard to her entailed estate ?    In the case cited, *p.* 172, Mr. Justice *Sewall*, in alluding to cases in England, where by local custom the deed of husband and wife is held to be as effectual as a conveyance by record at common law, adds, that a like usage has prevailed here from the earliest times.    A conveyance by husband and wife of lands holden in her right, may be by deed, and this mode of conveyance is now to be ranked among the common assurances, which are not to be questioned or disurbed.    This usage and the efficacy attributed to the deed

of a married woman, not only to bar herself of an inchoate right of dower, but to convey and transfer her separate estate, were long known as the settled law of the land, and must have been so recognised and understood by the legislature when this statute was passed. They must be presumed to have used language, and made provisions, in reference to the ex isting laws upon the same subject matter. The language of the statute is general : " It shall be lawful for any person or persons, who shall be seised and possessed of any lands, &c., in fee tail." This exactly describes the case of husband and wife, seised in fee tail, in her right. The statute adds, " by deed duly executed," &c. What constitutes the due execution of a deed, except that it must be by a person of full age, is not particularly described. It is left to be regulated by the known laws respecting the execution of other deeds in like cases. It must be sealed, and delivered, it must be made by a person of sane mind, and free from duress. Had a *feme covert* been under a general disability to convey her land by deed before, there would have been strong ground for the argument ; though still it might have been contended with some plausibility, that as the statute makes no exception it would be reasonable to consider it as an enabling act, giving the power where it did not exist before. But when it is considered, that from the earliest times it had been in the power of a married woman, by joining with her husband, to convey her estate by deed, whenever she had the power of alienation ; that at common law, she had the power, when holding estate as tenant in tail, by joining with her husband, to suffer a common recovery, by which all remainders and reversions would be barred, and when it was the avowed purpose of the statute to substitute the simple and cheap method of a conveyance by deed, instead of the dilatory and expensive process of a common recovery, and when the statute itself makes no exceptions, we think it would be narrowing down the operation of the statute, and depriving it of the legitimate and liberal operation intended by the legislature, to say that it shall not extend to give efficacy to the deed of husband and wife. It is to be considered, that the statute gives no new power, but provides a more simple and

easy method of executing an existing power.  Prior to the statute, necessity and the usage of the country had put husband and wife on the same footing with other holders of real estate, and authorized them to convey by deed, contrary to the rules of the common law.  If they could not then bar an entail, in the same way, in case the wife was seised in fee tail, it was not because she was under a disability as a *feme covert*, but because no tenant in tail could bar the entail, without first suffering a common recovery.  When this last provision is changed by positive law, and tenants in tail are authorized to bar the entail by deed, without exception, why should the disability of coverture be set up as an implied exception, when by the existing law, in relation to the same subject matter, that is, the conveyance of the estate of a feme covert by deed, no such disability had existed ?  On the whole, we are of opinion, that the deed of Burrell and his wife was as effectual to bar the remainders and reversions, expectant upon this estate tail, as her own deed would have been under the statute, had she been sole, and seised in like manner.

It was intimated in the argument, that the conveyance in fee to Walter was not made in good faith, and " *bonâ fide*" under the statute.

It is not perhaps easy to decide what was intended by the use of the words *bonâ fide* in this statute.

In *Wheelwright* v. *Wheelwright*, 2 Mass. R. 447, the deeds purported to be made for a valuable consideration in money, and also for love and affection ; and it was in proof, that the intent of the tenant in tail, in executing the deeds, was, to prevent the entail from depriving the grantees of the lands conveyed, in other words, to bar the entail.  On the part of the issue in tail, it was contended that such a conveyance was not made *bonâ fide* within the statute.  On the other side it was maintained, that this was a legitimate and proper purpose under the statute, doing nothing more than the tenant in tail had a right to do without the statute, by common recovery.  It was held by the Court, that the deeds purporting to be made both for a good and for a valuable consideration, it was clear that the statute intended that the

tenant in tail might bar the heir in tail, by deed conveying the land to his relations, executed for a *good*, although not for a *valuable* consideration ; treating a conveyance under the statute as a substitute for a common recovery. The Court further say, that as the statute makes estates tail assets for payment of the debts of the tenant in tail before and after his decease, a *bonâ fide* conveyance is required, to prevent aliena tions to defraud creditors, and not to protect the heir in tail.

This goes far to settle the construction of the terms *bonâ fide* in this statute.

In *Soule* v. *Soule*, 5 Mass. R. 64, there was an agreed statement of facts, by which it appeared, that tenant in tail conveyed to A, and he to B, and B back to the original tenant in tail and grantor, in fee simple. It was there agreed in terms, that there was no consideration for either of the deeds, but the intention was to bar the entail. It was held by the Court, that this was not conformable to the statute, and was inoperative, and it was decided expressly upon the ground, that there was no consideration, whereas the statute requires the deed to be made upon a good *or* a valuable consideration, either being sufficient.

But we do not consider this general question as involved in the present inquiry. The deed purports to be made for a valuable consideration actually received, and there is nothing to render this admission in the deed questionable, if it were open to question in a case like the present. The only circumstance is, that the grantors have remained in possession. But this they might do, in perfect consistency with the deed. The original deed purports to be made in consideration of a sum of money, and of a lease of the premises for one year, at an apparently nominal rent. Before the expiration of the term, a declaration of trust by indenture was duly made, by Walter. among other things to permit the grantors to have possession of the premises, during their lives and the life of the survivor. This therefore satisfactorily accounts for the continued possession of the tenant, since the making of the deed. How this conveyance would have stood against the claims of creditors, is another and very different question.

There is nothing in the declaration of trust itself to show,

Nightingale
v.
Burrell.

that the valuable consideration was not paid, according to the purport of the deed. It was made many months after the deed. It might be, that the original deed was given to pay or secure a debt to the grantee or some other person, which was afterwards paid, or otherwise secured, and the declaration of trust substituted instead of a reconveyance, at the request of the parties.

But it is unnecessary to speculate upon the various purposes, for which the deed might have been originally made, or the views which afterwards led to this declaration of trust. If it were intended to impeach this deed, as not being a good conveyance to bar the entail, by force of the statute, because it was made without consideration or not *bonâ fide*, the burden of proof was upon the demandant to show it, and this has not been done.

We are therefore of opinion, that by this deed to Walter, the remainder in tail now claimed by the demandant was legally barred, and therefore, neither as an executory devise, nor as a remainder, is she entitled to recover. This renders it unnecessary to give any opinion upon the effect of the deed of partition and the covenants contained in it.